IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOE SELLERS,

                      Plaintiff,

  v.

STATE COLLECTION SERVICE, INC.,

                      Defendant.

OPINION & ORDER

15-cv-148-jdp

---

Plaintiff Joe Sellers contends that defendant State Collection Service, Inc. violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p (FDCPA), when it continued to call plaintiff after he had explicitly asked defendant to stop calling him. In his complaint, plaintiff alleged that on December 1, 2014, he informed defendant that "he worked from 8 a.m. until 5 p.m. and that calls during his business hours were inconvenient and disruptive." Dkt. 1, ¶ 12.

Now defendant has moved for summary judgment. Dkt. 9. Because plaintiff has failed to adduce any evidence of an FDCPA violation, the court will grant defendant's motion.

UNDISPUTED FACTS

Except where noted, the following facts are undisputed.

Defendant State Collection Service, Inc. is a licensed collection agency authorized to collect consumer medical debts. Defendant called plaintiff on November 19, 2014; defendant's representative identified herself and informed plaintiff that she was calling to collect a debt he owed Northwest Hospital and Medical Center.[1] Plaintiff represents that the

---

[1] The parties have submitted audio recordings of the November 19, 2014, December 1, 2014,

November 19, 2014, recording is not representative of the entire call, but plaintiff offers no explanation for this belief and does not describe the "lost" portion of the call or contend that it is material. In fact, the record strongly suggests that plaintiff likely hung-up mid-call, cutting-off defendant's representative mid-sentence. Dkt. 21-2, at 3 (account notes read "HU DURING MINI").

On December 1, 2014, at 8:57 a.m. plaintiff's time (PST), defendant called plaintiff at a phone number that plaintiff had provided to Northwest Hospital. Plaintiff did not answer the call, and defendant did not leave a message. About seven minutes later, at 9:05 a.m., plaintiff returned defendant's call. Plaintiff asked, "Who is this first of all and where are you calling from?" Dkt. 12-2 and Dkt. 18, at 3. When defendant's representative identified herself and stated that plaintiff had "reached State Collection Service," plaintiff responded, "No, I don't want to talk to you." Dkt. 12-2 and Dkt. 18, at 3. Defendant's representative stated that they had been trying to get in touch with a Joe Sellers, and plaintiff abruptly hung up.

Defendant called plaintiff again on December 2, 2014, December 9, 2014, December 16, 2014, December 19, 2014, December 26, 2014, December 29, 2014, January 5, 2015, January 12, 2015, January 15, 2015, January 22, 2015, and January 26, 2015. Defendant also called plaintiff on December 3, 2014, December 10, 2014, December 17, 2014, December 30, 2014, and January 7, 2015, but call records indicate that plaintiff did not answer these calls and that they lasted one minute or less.

Defendant called plaintiff again on January 30, 2015, at approximately 9:03 a.m. About one hour later, plaintiff returned defendant's call and initiated the following exchange:

---

January 30, 2015, and February 17, 2015, phone calls.

> Defendant: This is a recorded and monitored line. My name is June, how can I help you?
>
> Plaintiff: Uh, you called my number, XXX-XXX-XXXX.
>
> Defendant: Excuse me, is this Joe?
>
> Plaintiff: Who are you?
>
> Defendant: My name is June.
>
> Plaintiff: I know that, but I'm saying, where are you calling from? What do you want?
>
> Defendant: My name is—excuse me—I'm calling from State Collection Service.
>
> Plaintiff: What?
>
> Defendant: I'm calling from State Collection Service.
>
> Plaintiff: Alright, you need to hang up and don't call me no more. I'm sick of you guys calling me and as soon as I say "hello," you hang up.
>
> Defendant: You're extremely rude sir.

Dkt. 21-4 and Dkt. 23, at 3-4.

Defendant called plaintiff again on February 2, 9, 10, and 16, 2015. On February 17, 2015, plaintiff called defendant and informed defendant's representative that he did not want to receive any more calls from defendant. Plaintiff claimed that he had previously told defendant's representatives that he was at work and could be fired for being on the phone. Plaintiff asked why defendant had been calling him, and defendant's representative explained that she had called to collect several debts. Plaintiff, obviously frustrated, told the representative that he did not want to receive any more calls and that he had said as much several times in the past. Defendant's representative tried to explain that she had called with

3

respect to newer balances, but plaintiff insisted that he wanted defendant to stop calling him with respect to everything. Defendant did not call plaintiff again.

On March 6, 2015, plaintiff filed suit in this court, alleging that defendant had violated the FDCPA by calling him at a place and during a time known to be inconvenient for him; by harassing, oppressing, or abusing him; and by using unfair and unconscionable means to collect a debt. Dkt. 1, at 3.

The court has subject matter jurisdiction over plaintiff's FDCPA claims pursuant to 28 U.S.C. § 1331, because they arise under federal law.

ANALYSIS

The court must grant summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* The non-moving party may not simply rely on the allegations in its pleadings to create a genuine dispute but must "demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in [its] favor[.]" *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). "[S]ummary judgment 'is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)).

In his complaint, plaintiff contends that defendant violated three FDCPA provisions: 15 U.S.C. §§ 1692c(a)(1), 1692d, and 1692f. At least for purposes of summary judgment, defendant does not dispute: (1) that it is a debt collector under the FDCPA; (2) that the FDCPA governs its actions; or (3) that plaintiff is a consumer under the FDCPA.

Plaintiff concedes that the December 1, 2014, call did not happen as he alleged in his complaint. Plaintiff did not inform defendant that he worked from 8 a.m. until 5 p.m. or that calls during business hours were inconvenient and disruptive. Plaintiff did not mention work, inconvenience, or disruption at all on December 1, 2014, nor did plaintiff tell defendant to stop calling him. Rather, the undisputed facts are that: (1) plaintiff informed defendant that he did not want to talk on December 1, 2014; (2) plaintiff asked that defendant stop calling him on January 30, 2015; and (3) plaintiff mentioned that calls during work could get him fired and asked that defendant cease all communications with him on February 17, 2015. Plaintiff contends that defendant's continued calls to plaintiff after the December 1 and January 30 conversations violated the FDCPA.

**A. Sections 1692c(a)(1), (c)**

15 U.S.C. § 1692c(a)(1) prohibits debt collectors from communicating with consumers "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." The statute also provides that calls made between 8 a.m. and 9 p.m. are presumptively convenient, "[i]n the absence of knowledge of circumstances to the contrary[.]" *Id.* Plaintiff did not have to formally notify defendant in writing that contacting him at a certain time or place was inconvenient to stop defendant from contacting plaintiff. *See Brzezinski v. Vital Recovery Servs., Inc.*, No. 05-cv-1020, 2006 WL 1982501, at *5 (E.D. Wis. July 12, 2006) ("[D]ebt collectors must honor requests to cease

5

communications at places of employment and at inconvenient times and places, even if the requests are made orally and are not written.").

But plaintiff has adduced no evidence that he ever suggested, much less expressly communicated to defendant, that defendant was calling at inconvenient times or places. Plaintiff never mentioned work or certain disruptive times on either December 1, 2014, or January 30, 2015. Plaintiff did not give defendant *any* reason to believe that the phone calls, made during presumptively convenient hours, were inconvenient. *See Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 470 (E.D.N.Y. 2012) ("Section 1692c(a)(1) focuses on the disregard of a known or obvious time or place restriction—like calling someone at midnight."). An unsophisticated consumer does not need to state his FDCPA rights in precise terms, but the consumer must say *something* that would place the debt collector on notice that something about the call is inconvenient. *See Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 773 (7th Cir. 2003) ("Unsophisticated consumers, whatever else may be said about them, cannot be expected to assert their § 1692c(a)(3) rights in legally precise phrases. It is therefore enough to put debt collectors on notice under § 1692c(a)(3) when a consumer states in plain English that she cannot speak to the debt collector at work."). Here, on December 1, 2014, plaintiff stated only that he did not want to talk and did not say anything about the timing or location of the phone calls. On January 30, 2015, plaintiff stated only that he wanted defendant to stop calling him, period. And the fact that plaintiff *returned* defendant's calls on both occasions indicates that the time and location of the calls were not inconvenient.

During the February 17, 2015, call, plaintiff stated that he had already told defendant's representatives on previous occasions to not call him when he is at work because

6

he "could get fired." This statement potentially suggests that plaintiff had notified defendant at some point that the calls were coming at inconvenient times. However, plaintiff has adduced no evidence of these prior communications. All we know is that plaintiff claimed to have mentioned work in the past on February 17, 2015, and when he made this claim, defendant promptly stopped communicating with plaintiff. Plaintiff has adduced no evidence that defendant should have known that the phone calls were inconvenient prior to February 17, 2015. Summary judgment is "the put up or shut up" moment in litigation, and plaintiff has failed to create a triable dispute of material fact on this issue.

Although plaintiff cannot succeed on his section 1692c(a)(1) claim, plaintiff's summary judgment briefing suggests that his section 1692c(a)(1) claim has evolved into a section 1692c(c) claim, in light of recent discovery. Section 1692c(c) prohibits debt collectors from continuing to call a consumer to collect a certain debt if the consumer "notifies a debt collector *in writing* that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer[.]" (emphasis added).[2]

Plaintiff contends that he asked defendant to stop calling him on December 1, 2014, and January 30, 2015. And on February 17, 2015, defendant's representative acknowledged that plaintiff had previously requested that defendant stop calling him, with respect to a Harborview Medical Center debt. Even resolving all factual disputes in plaintiff's favor and assuming that he effectively communicated that he wanted defendant to stop calling him on

---

[2] Even after written notice, debt collectors may continue to communicate with a consumer: (1) to advise the consumer that the debt collector will not call again; (2) to notify the consumer that the debt collector "may invoke specified remedies which are ordinarily invoked by such debt collector or creditor"; or (3) to notify the consumer that the debt collector intends to invoke a specific remedy. 15 U.S.C. § 1692c(c)(1)-(3). But none of these exceptions apply here.

those dates, nothing in the record indicates that plaintiff ever communicated this request *in writing*. The plain language of section 1692c(c) requires written notification. "The text articulates no other circumstances requiring a debt collector to cease communications." *Henderson v. Nationstar Mortg., LLC*, No. 14-cv-8194, 2015 WL 2375258, at *2 (N.D. Ill. May 15, 2015). "Where the statute's language is plain, the court's function is to enforce it according to its terms." *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 680 (7th Cir. 1997).

Plaintiff fundamentally misunderstands and conflates sections 1692c(a) and 1692c(c). Despite plaintiff's contentions to the contrary, the fact that plaintiff asked defendant to stop calling him on several occasions is not enough to require defendant to cease its collection efforts. Although a debt collector must honor verbal requests to cease calling during inconvenient times, a debt collector must completely cease communications with a debtor only when the request is in writing. Plaintiff's multiple verbal requests were not enough to force defendant to cease its collection efforts. Any potential section 1692c(c) claim plaintiff may have raised in his summary judgment briefing necessarily fails.

**B. Section 1692d**

Plaintiff's complaint alleges violations of 15 U.S.C. § 1692d, the FDCPA's prohibition against debt collectors harassing or abusing consumers in their efforts to collect a debt. But plaintiff does not offer any arguments or evidence in support of a section 1692d claim in opposition to defendant's motion for summary judgment; plaintiff appears to have abandoned his section 1692d claim. "The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment." *Nichols v.*

*Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014). Defendant is entitled to summary judgment on this claim.

**C. Section 1692f**

Plaintiff's complaint also alludes to violations of 15 U.S.C. § 1692f, the FDCPA's prohibition against unfair or unconscionable means to collect a debt. Again, plaintiff has failed to adduce any evidence of a section 1692f violation and appears to have abandoned this claim at summary judgment. Defendant is entitled to summary judgment on this claim.

One final note: plaintiff's brief in opposition to summary judgment contains a throw-away line that implies that he believes that defendant has withheld discovery, that defendant has not accounted for all of the phone calls between the parties, and that, as a result, material disputes of fact exist that should go to the jury. Dkt. 19, at 7-8. But plaintiff offers no explanation or support for this assertion, nor do these conclusory, speculative allegations create any triable issue of fact. Nor has plaintiff filed any discovery motion, as the scheduling order instructs the parties to do if discovery responses are inadequate. Dkt. 8, at 3-4. As the court has already stated, summary judgment is the put up or shut up moment during litigation, and plaintiff has failed to put up any evidence that defendant violated any provision of the FDCPA. The court will grant defendant's motion for summary judgment.

ORDER

IT IS ORDERED that:

1. Defendant State Collection Service, Inc.'s motion for summary judgment, Dkt. 9, is GRANTED.

2. The clerk of court is directed to enter judgment for defendant and close this case.

Entered March 24, 2016.

                                BY THE COURT:

                                /s/

                                _____
                                JAMES D. PETERSON
                                District Judge